After we hear argument in the first, the panel will leave and be replaced by an equally distinguished second panel to hear the second case. First case, if I pronounce it correctly, is Dupuy Synthes Products v. Smith & Nephew, 2014-11-36, Mr. Cronin. May I proceed? Yes, please do. May it please the court, in this argument, I intend to briefly discuss three important items that relate to Synthes' appeal. The first is commercial success and how it relates to this case. The second is collateral estoppel and why it does not bar this appeal from going forward. The third is the legal errors that the board committed in its handling of Nexus and its failure to undertake the Graham v. John Deere analysis anew in light of the evidence of commercial success. At page 43 of the appellee's brief, they say the record is completely devoid of any evidence that competitor plates are even covered by Claim 1 of the 486 patent. Do you have it in the record? I'm sorry? What do you have in the record to support it? Yes, Your Honor, we have the declaration of Mr. Hogg. Mr. Hogg, in his declaration, discusses Claim 1 and applies it to the LCP products. And below, in the proceedings below, before appellee filed its brief and made that remark on page 43, Smith and Nephew had never contested that the LCP products were not covered by Claim 1. It's simply its position that that's a brand new argument and all of the arguments that go with it. The claim construction and everything related to it is new. Before we arrived here at this stage, the issue was Nexus. The issue was whether or not, it wasn't whether or not the patent covered the product. With respect to commercial success, the board ignored Synthase's abundant and compelling evidence of commercial success. But you had a case before us before where we found the claims invalid for obviousness and commercial success wasn't raised there, correct? So why isn't there a stop? There isn't a stop, Your Honor, for a number of reasons. There's two main reasons. First is that the claims here, the 486 patent, are much different from the claims of the 744 patent. So under the Comair-Rotron case, the five-factor analysis is completely different. So isn't the relevant portion that distinguishes them over the prior art the same? It is not, Your Honor, and I'll address that for you if you'd like. With respect to Claim 1 of the 486 patent, that has additional limitations, limitations that are not present in the 744 claims that were appealed. Those limitations actually change the obviousness analysis and relate to commercial success. In the 744 appeal, the… What limitations are you talking about? I thought that the main point of this and the reason your product is, or at least your arguments for why it's successful, is that the screw holes in the head can be threaded or unthreaded. Well, in the 486 patent, it claims screws, two types of screws, a first screw and a second screw, a screw with a threaded head and a non-threaded head. Wasn't the claim on which commercialization squarely rested both last time and this time whether the bone plate's head portion had only threaded holes? In the 744 patent, yes, that was the issue. Here, we are different because the 486 patent claims the screws. The screws are important. Also, the shaft of the 486 patent is different from the shaft of the 744 patent claims. For example, in the 486 patent, the shaft requires both first and second holes, which is a threaded hole and a non-threaded hole. The 744 patent shaft and the head, all threaded screws. That shaft of the 744 patent is just like the Haas reference, all threaded holes throughout. But because the 486 requires a second hole in the shaft, it requires compression. Compression was absolutely important and an unadulterated compression, not compression that you could achieve by putting any screw into a threaded hole. Even aside from the issue of collateral estoppel, didn't the board, in fact, consider the issue of commercial success and decided that there were other factors in success and it was probably based on the presence of combi holes that aren't in the patent? With respect to this case, Your Honor, and not the previous case, is that the question? Yes. What the board did, Your Honor, it completely disregarded the evidence of commercial success. It jumped right over the evidence and jumped right to Smith and Nephew's arguments that all these additional factors that, for lack of a better term, threw up a wall and pointed at it and said we didn't address it. But the D'Amico case, the Continental Can case, the Rambis case, those cases don't permit that. As a matter of fact, this court overruled the board in each of those cases for the exact same thing the board did here. But don't we owe deference on these fact findings of the board relating to commercial success? No, Your Honor. No. Because, well, it's reviewed for substantial evidence, but the board didn't rely on substantial evidence. The board relied upon conjecture and surmise. What Smith and Nephew argued was that things could have related, but it never actually... Didn't they rely on our last opinion? In terms of what, Your Honor? Their decision this time. Well, the last opinion addressed the 744 patent, which is completely different on the claims. And so the issue of obviousness there is different. They didn't seem to think so. I'm sorry? They did not seem to think so. Correct. The board latched on to this court's opinion in the last case and excused itself from doing really any analysis. Are you trying to suggest that there's something that renders this patent non-obvious apart from your commercial success argument? I didn't understand that to be the case from the briefs. Yes, Your Honor. Because Synthase has introduced what we feel is substantial and compelling evidence of commercial success, we made the nexus finding. At that point in time, the law requires the board to look at everything anew. And I'll address the issue of the change in the obviousness analysis now. Because we have evidence of commercial success, the board has to look at everything again. And when it looks at, for example, the differences between the patents, the 486 patent claim 1 and the 744 claims. For example, conforming. Claim 1 of the 486 patent requires that the head of the bone plate conform to the metathesis of the bone. The 744 patent doesn't require conforming. In fact, what Smith and Nephew said is that... Is this argument in your briefs? Yes, we do discuss that the metathesis is a distinguishing factor. Did you make an argument to the board that even given our decision on the other patent and the obviousness of its capabilities, that this patent is so substantially different and that there are different claim limitations that render it not obvious? Before the board? Yes. We did argue that the... Because it sounds like we're talking about something completely different now than that was argued in the briefs, which was the reason this is not obvious is because of commercial success, not because the claim limitations are different. Well, the claim limitations being different is what is the argument that says collateral estoppel doesn't apply. But it also does relate to commercial success because with respect to the screws that are claimed by the 486 patent, the 744 patent does not claim screws. What did the board say about that issue? About? The screws. The screws? The board didn't really say anything, Your Honor. It skipped right over our evidence. Did you make that argument that it was not obvious because of those screws to the board? I believe we did, Your Honor. Where? Did you make that to us? We did. So point me in this brief where you made that argument. Let me not take up too much of your time. Point two in your brief is the board erred because it didn't talk about commercial success in the nexus. Point three in the brief is it didn't look at synthesis as evidence of commercial success. There is not an argument in here about non-obviousness based upon different claims limitations. I don't want to take up your time. You don't have very much. Why don't you get to the nexus point on success? Your Honor, with respect to nexus, the synthase introduced evidence that linked the commercial success of the Claim 1 of the 486 patent to the LCP products. It did so through the declaration of Mr. Hogg and Dr. Turin. Was that any different than the evidence in the first case? Well, it is, Your Honor. It is different, again, and I come back to the screws, but the screws are very important. The fact that the 486 patent claims screws makes the evidence of commercial success much more appropriate here. It makes the nexus... But it's the same declaration as before, is it not? Well, no. Dr. Turin actually submitted a second declaration in this case for this appeal on the issue of commercial success. But in the prior appeal, Smith and Nephew raised a nexus issue. It made the argument that the 744 patent did not claim screws. The LCP kits, what Claim 1 reads directly on, is the bone plate and the screws. In the previous appeal, the 744 didn't claim screws. Smith and Nephew made note of that and made a pretty big deal about it. So it's much more appropriate to make that argument here. We have a strong nexus here. We have the plate and the screws that are covered. And the evidence, we feel, speaks for itself. It speaks very loudly how successful this was with the third-party accolades that we received in indicating that this was revolutionary. And it was, according to the Orthopedic Network news, the LCP plate and screw combination represented the most significant change in over 20 years. That's at A11506. There's news out, and the board recognized, your products have a commercial success. The finding that we're reviewing, which I think is just on a substantial error, a substantial evidence standard, is whether the board's finding that you didn't show that the patented inventions had the nexus to commercial success. And you put in a lot of evidence about why it does, but the board looked at other evidence and relied on other factors for why your products were commercially successful apart from the invention. We agree, Your Honor, and we feel that that is error because under the D'Amico, Continental, Cannes, and Rambus cases, it can't require us to prove negatives, and that's what it did. It didn't give us any weight. It didn't find nexus. It skipped right over our evidence. Well, isn't that just because it assumed you had shown commercial success and it found reasons that rebutted that? No, the board made no finding. Actually, the board stated that it found no nexus. When it found no nexus, that means it didn't give us any weight. It didn't weigh our evidence at all. It skipped right over it. Your Honor, I'm into my rebuttal time. I'm going to reserve. We will save it for you, Mr. Cronin. Thank you. Mr. Wray. Thank you. May it please the Court. We debated all these points a year and a half ago. Collateral stop-off does apply, and the reason why no arguments were made concerning the patentability of any other limitation other than having threaded holes only in the head is because at the time the presentation was made to the board in April of 2013, this Court had not ruled yet in the 744 case. So they had a ruling back then where the board was in agreement that that was the patentable feature. This Court then reversed that unanimously in the presidential opinion that we're relying on for collateral stop-off. In order now for collateral stop-off not to apply, as this Court has stated in Ohio Willow and in the predecessor cases of the Court of Claims, they have to show, Synthes has to show, that there's something in the claims that distinguished the invention relative to the prior art. That's what they didn't do, Judge Hughes. That's what you're getting at with your questions. Their questions were limited solely, their arguments for patentability were limited solely to having only threaded holes in the head. That was the precise issue before this Court in the prior appeal. And this Court found that attribute to be not patentable. But we didn't address the issue of commercial success because the board didn't get to it in the prior case because it had found that patentable, right? No, this Court, well, you're partially right. This Court did not address commercial success in the prior appeal because Synthes did not argue it supported the board's... Well, the board hadn't reached that issue either on at least the Claim 1, right? That's correct. So your argument as to why it was litigated is that evidence was put forth at the board that the board never looked at, and then on appeal, they were the appellee on that one, I guess. They didn't raise that as an alternative grounds for affirmance? Correct. They did not raise it as an alternative ground for affirmance. I went back over the argument, and I don't find, the oral argument, I don't find any discussion of commercial success. That's correct, because it would be their burden to raise commercial success in support of patentability. But I want... Doesn't collateral stockhold require the issue to actually have been litigated? Yes, but what is the issue? The case law, Ohio Willow, Borns, Westwood Chemical. The issue is not, as they say, a final determination on commercial success. No case law supports that as the definition of the issue. The issue is validity, in particular, obviousness. And this court is held in Ohio Willow and in Borns and Westwood Chemical. That's the definition of the issue. The issue is validity or patentability under Section 103 of the Patent Act. You do not define the issue based upon some subsidiary evidentiary leg or underpinning. The issue is validity, patentability, obviousness. I would tend to agree with you, but the one call I have is that given the way these things come up from the board, since the board had found the patent non-obvious just looking at the prior art and hadn't ever reached commercial success, their argument of commercial success as an alternative grounds for affirmance wouldn't have been something we could have ever reached in the first instance anyway. So it seems a little bit removed because they would have had to basically say if you disagree with the board on the prior art, then we showed them all this evidence of commercial success, which you can't rule on, but you should send it back to them to rule on. At a minimum, you could have sent it back. So I disagree that the court couldn't have ruled upon it. The court could have said, we find no, we agree, well, no. You would have affirmed the board. How could we have affirmed the board? You would have affirmed it. Wouldn't there have had to be factual findings by the board on commercial success for us to review, to affirm them? Not necessarily. This court has a high degree of discretion on whether or not they send it back for additional findings on commercial success. We would have vacated. You would have vacated, sent it back on commercial success. But it was up to them to preserve that issue. They had the obligation to raise any argument in support of sustaining the patentability of their patent. And they didn't. And in fact, their brief, however, did tell you in the prior case that there was, and the phrase, and they quoted in their brief here, that there is astonishing commercial success. They even mentioned the astonishing commercial success in the prior appeal. So collateral estoppel cannot be avoided by simply your selection of which evidence you want to rely upon for your argument. So all of the reasons for collateral estoppel squarely apply in view of the prior ruling. And in fact, the board listed the five or so major holdings of the prior Smith and Nephew decision. And holdings number one and holdings number five, which are listed in the board opinion, clearly foreclose all the arguments that they're making here. But aside from collateral estoppel, how about on the merits question of nexus? The easy path, of course, is substantial evidence supports the board's findings. In this case, there are several reasons why they aren't entitled to a finding of nexus. And their argument is the board had to find nexus. And that's just not true. Clearly, there's substantial evidence supporting the board's findings of no nexus. One, we have the issue about whether the claim even reads on their commercial device. By the way, Judge Wallach, your question was not answered. There is nothing of record concerning our device copying or any competitor device. Mr. Cronin went to the LCP, which is his own client's device. Your question went to competitors, and you are correct. There's nothing of evidence concerning the characteristics of third-party devices, including my own client, which is just nothing of record. But clearly, on this record, there were many reasons given why the board was entitled to find a lack of nexus. For example, Synthes is the dominant player. Synthes had 80, 90% of the market. Synthes has a dominant position in the market, so of course their products are the best-selling products even before they introduced the so-called patented device. The real problem with this case on nexus is that all the evidence they submitted on nexus, I mean 99%, one, it was submitted in the prior case, prior board appeal had the same declarations. By the way, page 5 of our brief outlines the identity of the declarations. But the real problem is... Is there a new declaration in there? Is there a new... On commercial success. No. Identical. For the purposes of this appeal, I will say it is identical. There is no new information provided that was not before the board in the 744. They're just relying on it now in this court, but they relied on it before the board in both proceedings. But the most important thing about their evidence, their evidence was omnibus evidence. They submitted these declarations for multiple re-exams. And the problem... Let me just say, I asked you that question, Mr. Rick, because I jotted a note when I was told there was a second declaration to go look at it. When I look at it, it's going to be the same? There was a second declaration, but those declarations were essentially the same as the 744 case. They didn't add any new information, is what I'm saying. There was two term declarations before the board on the 486 re-exam. That's correct. And you're saying that for all intents and purposes it's the same? Right, there's no new information. The problem is, if you read all their declarations, what their declarations stand for, in essence, is that hybrid technology is commercially successful. Well, I don't think that's even a debate. The problem is, hybrid technology is the K-98 cobalt plate. The problem is, all they did was show that their device is commercially successful over what was previously commercially out there. The problem is, they submitted no evidence explaining how their devices are commercially successful relative to the prior art. And the problem is, K-98 and cobalt were never commercialized, but they are prior art, and they are the same references that this court relied upon in the prior appeal, and therefore they didn't show nexus relative to the prior art. You can't just say, my device is successful versus what was previously commercialized. You have to say, mine is commercially successful relative to the closest prior art. They never attempted to do that. The doctors that they submitted never dealt with the fact that K-98 and cobalt are prior art devices, and they are in fact hybrid technology, and they are in the public domain. Now show me nexus relative to what's in the public domain. That they never attempted to do. So clearly the board had many reasons to find no nexus. I mean our declaration alone is substantial evidence. And I just give them the citations if you're interested in where the term and declarations are. But clearly the board had lots of reasons to find lack of nexus. For example, once they come forth and say commercially successful, we are entitled to say, hey there are other grounds that bear on the commercial success. For example, Cynthia's dominant position. Clearly an important aspect to nexus. Or the combi holes. The combi holes are a large reason why they're commercially successful. It was incumbent on the party with the burden to establish nexus to explain that combi holes are not the reason. The trouble is the marketing materials give lots of reasons. What specific part of their claimed invention do they have to show has a nexus to commercial success? Well the claimed invention, but certainly you would think it's the attribute of patentability. Their argument of patentability... That's what I mean. You'll notice, you'll look far through those declarations to find a single statement that anybody purchased a Cynthia's device because the head has only threaded holes. Nobody is ever going to say that. But that's the issue, right? I couldn't... Or at least from your view, that's the issue. That's what I thought was the issue from the briefs, but I got a little confused on your friend's argument. But it's the head having the threaded holes. Yes. All threaded holes, not just some, which was in the prior. Yes. And the reason why Mr. Cronin had a little difficulty with your questions is because obviously what happened here is they thought that was a good argument before the board. Well this court destroyed that argument in a very thorough, detailed analysis. And in fact, this court's prior ruling said that threaded, only threaded holes in the head of a particular shape are obvious. These claims don't even require a particular shape. These claims just say all holes in the head are threaded and that's what they relied upon for patentability and that aspect only. The screws are obviously in the patent as prior art. The screws cannot be... Can I ask you a question that I don't think is argued by either of you? But given our prior finding on obviousness and the stuff about the threaded holes, even if we set aside the nexus and the commercial success arguments or even if we found that maybe there was some errors in the way the board handled it, couldn't we still, as a matter of law, just look at this and say even if there was some commercial success, it's not enough to show it's not obvious? Correct. Definitely could do that. You have lots of choices to affirm, but yes, I think it's stare decisis, it's collateral estoppel, and they cannot avoid this court's precedent by simply deciding now to emphasize evidence that was always at their disposal in the prior case. Identically. There's no equitable or fairness reason not to apply collateral estoppel here because it was strictly their doing on which arguments to make on the sole issue before the court. Patentability of a bone plate with threaded holes only in the head. That was the identical issue we argued and the court ruled was not patentable. But if you didn't want to go collateral estoppel, clearly substantial evidence supports the board's finding its own nexus and after no further questions I will yield the rest of my minute now. Thank you very much. Thank you Mr. Wray. Thank you. Mr. Crownman has a couple of minutes to revoke. To briefly address Mr. Wray's comments, this is not the Ohio Willow Wood case. In that case, Your Honor, the claims at issue there talked about limitations that were the same and insubstantial differences in language. Here we have claim limitations that are distinct. They're much different. There are additional limitations not just the same limitation. With respect to the argument that there's no evidence of copying, I'd refer the court to A11525. It shows the competitor's products and we've also had evidence in the record that the competitors took 20% of our market share. With respect to the notion that we didn't address Coval and K98 when we discussed commercial success, if I may direct the court's attention to A12890 and A12891, the declaration where specifically it's indicated that the LCP products would be purchased over Coval and K98 and gave reasons why they wouldn't. That goes to nexus. That goes to commercial success of the LCP products over what they claim to be the next closest prior art. With respect to hybrid technology, the LCP product that we put out there wasn't the Coval plate. It wasn't the K98 plate. It had all threaded holes in the head. So the notion that we're just claiming hybrid technology is not. The third-party accolades came in because we have all threaded holes in the head and the screws with it. It's hybrid because you can use the screws in any hole. That's where the hybrid comes from. With respect to the argument of commercial success in the 744 appeal, I think the court is correct. It wasn't made. Here, it's very appropriate to make because the 486 patent claims the screws. The screws are part of the commercially successful plate and screw system. Thank you, Your Honor. The time's up. Thank you, Mr. Cronin. The case will be taken under advisory.